[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 408.]

THE STATE EX REL. UNITED AUTO AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, APPELLEE, *v.* OHIO BUREAU OF WORKERS' COMPENSATION ET AL., APPELLANTS.

[Cite as *State ex rel. United Auto Aerospace & Agricultural Implement Workers of Am. v. Ohio Bur. of Workers' Comp.*, 2002-Ohio-2491.]

*Workers' compensation—In the absence of a rule promulgated pursuant to procedures in R.C. Chapter 119, the Administrator of Workers' Compensation is without authority to refund or reduce premiums pursuant to R.C. 4123.32(A).*

(No. 2000-0886—Submitted December 11, 2001—Decided June 12, 2002.)

APPEAL from the Court of Appeals for Franklin County, No. 99AP-406.

————————————

## SYLLABUS OF THE COURT

In the absence of a rule promulgated pursuant to the procedures set forth in R.C. Chapter 119, the Administrator of Workers' Compensation is without authority to refund or reduce premiums pursuant to R.C. 4123.32(A).

————————————

**DOUGLAS, J.**

{¶1} On March 11, 1999, appellant, James Conrad, administrator of appellant Ohio Bureau of Workers' Compensation ("BWC"), announced his decision to grant a one-time-only premium reduction credit to employers who pay into the state insurance fund. Specifically, the announcement provided, "The payroll report for Jan. 1 [1999], to June 30, 1999, payroll period you received with this newsletter reflects a one-time-only 75-percent premium dividend credit. This means you will pay only 25 percent of the premium due." The administrator's decision to grant the premium credit was based in part on his determination that the

fund contained a surplus of earned premium over all losses that was larger than necessary to adequately safeguard the solvency of the state insurance fund.

{¶2} On April 9, 1999, appellee, United Auto Aerospace & Agricultural Implement Workers of America ("U.A.W."), filed a complaint in mandamus and/or prohibition with the Tenth District Court of Appeals claiming that appellants exceeded their statutory authority by granting the premium credit without first promulgating rules as mandated by R.C. 4123.32. Appellee sought a peremptory writ of mandamus and/or prohibition ordering appellants to maintain the funds that have accumulated in the state insurance fund and not to grant the announced one-time-only premium credit for the payroll reporting period of January 1, 1999 to June 30, 1999.

{¶3} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate. The magistrate found that appellants improperly initiated the premium credit without first promulgating a rule. However, the magistrate denied the writ of mandamus, concluding that there was no affirmative relief to which the appellee was entitled. Additionally, the magistrate denied appellee's writ of prohibition, finding that appellants' actions were not judicial or quasi-judicial. Appellees filed objections to the magistrate's decision.

{¶4} The court of appeals did not follow the magistrate's recommendation but instead granted a writ of mandamus on the basis that the premium credit was not a refund of "future premiums" as required by R.C. 4123.32(A), and therefore the administrator's action in granting the premium credit contravened the authority set forth in R.C. 4123.32(A). Appellants appealed to this court as of right.

{¶5} Seldom do we have such a role reversal as we have in this case. Usually, we have a claimant seeking a ruling that allows or affirms an award for industrial injury. Often, these arguments are based on equity. On the other hand, we usually have employers (and the BWC) insisting that we follow and strictly

2

construe and apply the workers' compensation statutes no matter how unfair that they might be in an individual claimant's case and notwithstanding how compelling the equitable arguments of a claimant may be.

**{¶6}** Today, however, we have the BWC and various employers asking us not to apply what appears to be a clear and, by their own admission, unambiguous statute. They argue policy and say that approving the action of the BWC is the "right" thing to do. Where is a court to turn?

**{¶7}** It appears that the case is neither difficult nor cloudy. The statute is clear, and the law is unambiguous. R.C. 4123.32 provides:

**{¶8}** "The administrator of workers' compensation, with the advice and consent of the workers' compensation oversight commission, *shall adopt rules* with respect to the collection, maintenance, and disbursements of the state insurance fund including all of the following:

**{¶9}** "(A) *a rule* providing that in the event there is developed as of any given rate revision date a surplus of earned premium over all losses which, in the judgment of the administrator, is larger than is necessary adequately to safeguard the solvency of the fund, the administrator may return such excess surplus to the subscriber to the fund in either the form of cash refunds or a reduction of *future premiums.*" (Emphasis added.)

**{¶10}** The record reflects that the administrator issued the notice on March 11, 1999, granting a premium credit for the payroll period of January 1, 1999 through June 30, 1999. However, at the time that the notice was issued, the premiums from the January 1, 1999 to June 30, 1999 payroll period were already due and owing. Clearly, a premium that has already accrued is not a "future premium." Thus, under any interpretation, strained or otherwise, the reduction announced by the administrator in March 1999 was clearly unlawful, since it was not, as required by R.C. 4123.32(A), the reduction of a "future premium." Accordingly, we affirm the judgment of the court of appeals.

**{¶11}** While our decision above is dispositive of this case, we nevertheless review additional grounds for granting the writ of mandamus. As noted, the magistrate for the court of appeals found that in reducing the premiums without first promulgating a rule allowing him to do so, the administrator exceeded his authority. R.C. 4123.32 provides that the administrator of the BWC "shall adopt rules" providing for the refund or reduction of premiums from the state insurance fund. It is undisputed that prior to March 11, 1999, the administrator had not adopted such rules. The authority to refund and/or reduce premiums granted by R.C. 4123.32(A) is not excepted from compliance with the administrative rule-making procedures of R.C. Chapter 119. R.C. 119.01(A). The purpose of the administrative rule-making process provided for by R.C. Chapter 119 is "to permit a full and fair analysis of the impact and validity of a proposed rule." *Condee v. Lindley* (1984), 12 Ohio St.3d 90, 93, 12 OBR 79, 81, 465 N.E.2d 450, 452. The administrator failed to promulgate rules pursuant to R.C. Chapter 119 in accordance with the mandates of R.C. 4123.32(A) and thereby prevented a full and fair analysis of the impact of the proposed premium reduction credit.

**{¶12}** Appellants contend that the rationale set forth in *Dressler Coal Corp. v. Call* (1981), 4 Ohio App.3d 81, 85, 4 OBR 161, 166, 446 N.E.2d 785, 789 (agency permissibly enforced standards with internally developed criteria where previously adopted rules had been enjoined and new rules had not yet been promulgated), and *State ex rel. Hoover Co. v. Mihm* (1996), 76 Ohio St.3d 619, 624, 669 N.E.2d 1130, 1134 (prior to the adoption of new administrative rules, agency permissibly enforced new statutory requirements regardless of whether the new statute invalidated existing agency rules), exempted the administrator from having to follow a mandated rule-making process. We disagree.

**{¶13}** In both *Dressler* and *Hoover*, the agencies had promulgated rules as required by statutory mandates. In the case at bar, the administrator disregarded the mandates of R.C. 4123.32(A) and did not promulgate rules providing for the

premium credit. In *Hoover*, 76 Ohio St.3d at 624, 669 N.E.2d at 1134, the court noted that the invalidation of an administrative rule does not leave an agency "rudderless" to carry out statutory duties. However, in the case at bar, BWC was not left "rudderless" due to the invalidation of an administrative rule, but rather, the administrator simply neglected to promulgate rules mandated by R.C. 4123.32(A). Thus, we find that the rationale of *Dressler* and *Hoover* does not support appellants' contention that an administrator of a state agency may disregard statutory mandates to promulgate agency rules.

{¶14} Accordingly, we hold that, in the absence of a rule promulgated pursuant to the procedures set forth in R.C. Chapter 119, the Administrator of Workers' Compensation is without authority to refund or reduce premiums pursuant to R.C. 4123.32(A).

{¶15} Some might ask what the U.A.W. had hoped to gain by bringing this cause of action, given that, as noted by appellants in their brief, "[r]elators' concerns have now become moot, as the BWC has enacted Ohio Admin. Code 4123-17-10 *in compliance with the statute*." (Emphasis added.) So what was to be gained? As stated at oral argument by the lawyer for appellee in response to a question posed from Justice Lundberg Stratton, "We hope to gain, to compel a public figure to obey the law." The rule of law must not be compromised, and in no instance is the rule of law more vital than when it regulates governmental activity. "The law is the standard and guardian of our liberty; it circumscribes and defends it; but to imagine liberty without the law, is to imagine every man with his sword in his hand to destroy him, who is weaker than himself; and that would be no pleasant prospect to those who cry out most for liberty." Edward Hyde (Earl of Clarendon), quoted in Bradley, Daniels, & Jones, Eds., The International Dictionary of Thoughts (1969) 430.

{¶16} Based upon the foregoing, we affirm the judgment of the court of appeals.

Judgment affirmed

and writ granted.

F.E. SWEENEY and PFEIFER, JJ. concur.

RESNICK, J., concurs in syllabus and judgment.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**MOYER, C.J.**, **dissenting**.

**{¶17}** Once again, a majority of this court has created a special remedy for certain parties who deem themselves relators in an original action seeking an extraordinary writ. Following publication of the majority opinion in this case, we should not wonder that the bench and the bar no longer know the rules that should apply to all persons or entities when they seek an order commanding a public official or quasi-public official to perform an act pursuant to his or her duty under the law. Principles of standing and the fundamental elements of a mandamus action that have been a part of our Ohio jurisprudence since its earliest days are no longer applied consistently.

I. Mandamus is not appropriate if the party has any other adequate specific
remedy. *Chinn v. Fayette Twp. Trustees* (1877), 32 Ohio St. 236, 237,

1877 WL 113

**{¶18}** An action in mandamus is proper only when the party requesting the writ pleads and proves (1) that the relator has a clear legal right to the relief requested; (2) that the respondents have a clear legal duty to perform the acts requested; and (3) that the relator suffers an injury for which there is no plain and adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle* (1983), 6 Ohio St.3d 28, 29, 6 OBR 50, 451 N.E.2d 225. If the court determines that the substance of the writ is actually an injunction, the original action must be dismissed, since this court does not have original jurisdiction in injunction. *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 150, 40 O.O.2d 141,

228 N.E.2d 631, citing *State ex rel. Stine v. McCaw* (1939), 136 Ohio St. 41, 44, 15 O.O. 538, 23 N.E.2d 631.

{¶19} In determining the substance of the writ, a court must scrutinize pleadings in order to determine whether the pleadings in an action filed by a party requesting mandamus as a remedy are consistent with the form and the substance of the relief sought. *State ex rel. Zupancic v. Limbach* (1991), 58 Ohio St.3d 130, 132, 568 N.E.2d 1206. A writ of mandamus compels action or commands performance of a duty; a decree of injunction restrains or forbids a performance of a specific act. *State ex rel. Smith v. Indus. Comm.* (1942), 139 Ohio St. 303, 22 O.O. 349, 39 N.E.2d 838, paragraph two of the syllabus. If a petition is labeled an action in mandamus but actually seeks an injunctive remedy to restrain and enjoin the respondents rather than to compel respondents to perform a clear legal duty, the petition does not state a cause of action in mandamus, but states a cause of action in injunction. *Pressley*, 11 Ohio St.2d 141, 150, 40 O.O.2d 141, 228 N.E.2d 631, citing *McCaw*, 136 Ohio St. 41, 44, 15 O.O. 538, 23 N.E.2d 631.

{¶20} Until the majority opinion in *State ex rel. Ohio Academy of Trial Lawyers v. Sheward* (1999), 86 Ohio St.3d 451, 475, 715 N.E.2d 1062, when a party raised the issue of the appropriate application of the test for a mandamus action, courts responded with a consistency that created necessary predictability in determining how a party invokes the original jurisdiction of a court. The cases in which the courts of this state, including this court, have consistently applied the test for determining whether an original action is a mandamus action would fill volumes of court reports.[1]

---

1. See, e.g., *State ex rel. Fattlar v. Boyle* (1998), 83 Ohio St.3d 123, 125, 698 N.E.2d 987; *State ex rel. Asberry v. Payne* (1998), 82 Ohio St.3d 44, 46-49, 693 N.E.2d 794; *State ex rel. McGinty v. Cleveland City School Dist. Bd. of Edn.* (1998), 81 Ohio St.3d 283, 287, 690 N.E.2d 1273; *State ex rel. Serv. Emp. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 173, 176-177, 689 N.E.2d 962; *State ex rel. Arnett v. Winemiller* (1997), 80 Ohio St.3d 255, 257-259, 685 N.E.2d 1219; *State ex rel. Kabert v. Shaker Hts. City School Dist. Bd. of Edn.* (1997), 78 Ohio St.3d 37, 39, 676 N.E.2d 101; *State ex rel. Hoover Co. v. Mihm* (1996), 76 Ohio St.3d 619, 624, 669

**{¶21}** The above test for mandamus is still valid and has been applied after *Sheward*, albeit with less consistency and predictability than before. See *State ex rel. Cunningham v. Amer Cunningham Co., L.P.A.* (2002), 94 Ohio St.3d 323, 324, 762 N.E.2d 1012; *State ex rel. Phillips v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 535, 537, 757 N.E.2d 319. In *Cunningham*, we held that in determining the true objects of a claimed action in mandamus, we must examine the complaint " 'to see whether it actually seeks to prevent, rather than to compel, official action.' " *Cunningham*, 94 Ohio St.3d at 324, 762 N.E.2d 1012, quoting *State ex rel. Stamps v. Montgomery Cty. Automatic Data Processing Bd.* (1989), 42 Ohio St.3d 164, 166, 538 N.E.2d 105.

**{¶22}** Applying this test as recently as February 27, 2002, we unanimously held that although the relator attempted to couch the allegations of his complaint in terms of compelling affirmative duties on the part of respondent law firm, i.e., to *remove* relator's surname from the firm name, "it is evident that the true objects of [relator's] complaint for a writ of mandamus are a declaratory judgment that [respondent law firm's] retention of his name violates Gov.Bar R. III(2) and DR 2-102 and a prohibitory injunction preventing [respondent law firm] from using his name in its firm name." *Cunningham*, 94 Ohio St.3d at 324, 762 N.E.2d 1012. We

---

N.E.2d 1130; *State ex rel. Toledo Edison Co. v. Clyde* (1996), 76 Ohio St.3d 508, 511, 668 N.E.2d 498; *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197; *White v. Clinton Cty. Bd. of Commrs.* (1996), 76 Ohio St.3d 416, 423, 667 N.E.2d 1223; *State ex rel. Askew v. Goldhart* (1996), 75 Ohio St.3d 608, 609, 665 N.E.2d 200; *State ex rel. Midwest Pride IV, Inc. v. Pontious (1996),* 75 Ohio St.3d 565, 566, 664 N.E.2d 931; *State ex rel. Zimmerman v. Tompkins (1996),* 75 Ohio St.3d 447, 448, 663 N.E.2d 639; *State ex rel. Burch v. Sheffield-Sheffield Lake City School Dist. Bd. of Edn.* (1996), 75 Ohio St.3d 216, 217, 661 N.E.2d 1086; *State ex rel. Hipp v. N. Canton* (1996), 75 Ohio St.3d 221, 222, 661 N.E.2d 1090; *State ex rel. Master v. Cleveland* (1996), 75 Ohio St.3d 23, 26-27, 661 N.E.2d 180; *State ex rel. Wright v. Ohio Adult Parole Auth.* (1996), 75 Ohio St.3d 82, 87, 661 N.E.2d 728; *State ex rel. Inskeep v. Staten* (1996), 74 Ohio St.3d 676, 677, 660 N.E.2d 1207; *State ex rel. Neff v. Corrigan* (1996), 75 Ohio St.3d 12, 16, 661 N.E.2d 170; *State ex rel. Brecksville Edn. Assn., OEA/NEA v. State Emp. Relations Bd.* (1996), 74 Ohio St.3d 665, 667, 660 N.E.2d 1199; *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.* (1996), 74 Ohio St.3d 543, 544, 660 N.E.2d 463; *State ex rel. Luna v. Huffman* (1996), 74 Ohio St.3d 486, 487, 659 N.E.2d 1279.

held that the court of appeals properly dismissed the mandamus complaint. Id. Language from the merit briefs and/or the complaint itself may reveal that relator really wants *to prevent conduct* rather than to *compel an act*.

{¶23} Finally, if the mandamus action does not provide effective relief unless accompanied by an ancillary preventive injunction, injunction rather than mandamus is the appropriate remedy. *State ex rel. Walker v. Bowling Green* (1994), 69 Ohio St.3d 391, 392, 632 N.E.2d 904. In *Walker*, the relators requested a writ of mandamus to compel a city and its officials to reapportion ward boundaries and to declare the current ward system unconstitutional. The court held that "were this court to find the city's apportionment plan unconstitutional, mandamus would not provide effective relief unless accompanied by an ancillary preventive or prohibitory injunction" and that "[a]lthough [relators' request for relief is] stated in positive language, the essence of such a request is to enjoin the city from conducting any future elections under the present apportionment system." Id. at 393, 632 N.E.2d 904.

{¶24} At issue is relator's request, as characterized by the majority opinion, for the court to order appellants "not to grant" the announced one-time-only premium credit. Specifically, relator asks the court to order appellants "not to grant the announced one-time-only premium dividend for private employers who pay premiums to the state insurance fund for the payroll-reporting period dating from January 1, 1999 to June 30, 1999." *Smith* held that a request for the Industrial Commission to cease disbursing funds was a request for an injunction, not a writ of mandamus, and was not within the original jurisdiction of the court. *Smith*, 139 Ohio St. at 303, 22 O.O. 349, 39 N.E.2d 838, paragraph three of the syllabus. I would find that relator's purpose is identical to that of *Smith* in that both sought to prevent an alleged disbursement from the state insurance fund. As what the relator seeks is an injunction, I would dismiss the writ of mandamus.

II. Standing

**{¶25}** The instant action also fails under a simple standing test. Relator must first establish standing to sue. Even in *Sheward*, 86 Ohio St.3d 451, 469, 715 N.E.2d 1062, the majority held that the relator first must establish standing to seek a remedy. Standing is satisfied when a party has a personal stake in the outcome of the controversy. *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas* (1973), 35 Ohio St.2d 176, 178-79, 64 O.O.2d 103, 298 N.E.2d 515. In *Sheward*, the majority held, "Where the object of an action in mandamus and/or prohibition is to procure the enforcement or protection of a public right, the relator need not show any legal or special individual interest in the result, it being sufficient that the relator is an Ohio citizen and, as such, interested in the execution of the laws of this state." *Sheward*, 86 Ohio St.3d 451, 715 N.E.2d 1062, paragraph one of the syllabus. Relator argues that the "public right" involved in the instant case is in the execution of Ohio laws by public officials and agencies. I disagree.

**{¶26}** Relator's reliance on *Sheward* to short-circuit the requirement of legal or special individual interest is simply incorrect. *Sheward* carved out a very narrow exception for " 'the *rare and extraordinary case*' where the challenged statute operates '*directly and broadly to divest the courts of judicial power.*' " (Emphasis sic.) *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d at 504, 715 N.E.2d 1062. This "public right doctrine" involves a usurpation of judicial power. *Id.* at 474, 715 N.E.2d 1062. "The private litigant must generally show that he or she has suffered or is threatened with direct or concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury." Id. at 469-70, 715 N.E.2d 1062.

**{¶27}** The Franklin County Court of Appeals in *Bowers v. Ohio State Dental Bd.* (2001), 142 Ohio App.3d 376, 381, 755 N.E.2d 948, discretionary appeal not allowed (2001), 93 Ohio St.3d 1417, 754 N.E.2d 262, emphasized that "[a]pplication of the public action rule of standing * * * is limited, and not all

alleged illegalities or irregularities rise to that level. Therefore, courts entertain such actions only where the alleged wrong affects the citizenry as a whole, involves issues of great importance and interest to the public at large, and the public injury by its refusal would be serious." The court noted that "[t]he vast majority of such cases involve voting rights and ballot disputes." In *Bowers*, the mandamus action was brought by dentists to compel the dental board to adopt an administrative rule specifying which exams the board would accept for licensure in Ohio. The court found that although the issues may tangentially affect the citizens of Ohio as a whole, they were not of sufficient importance to the general public to fall within the *Sheward* exception to the general standing requirement of specific personal injury to the litigant.

{¶28} In the instant case, there is no usurpation of judicial power. The disbursement of funds through the dividend is merely a reduction in employer premium payments and does not involve any divestment of judicial power of the courts. Because the majority has created a remedy in this case, for this relator, that is supported by no principle of law, and because consistent application of fundamental tests to determine standing and mandamus will be jeopardized by the majority's opinion, I dissent.

COOK and LUNDBERG STRATTON, JJ., concur in the foregoing dissenting opinion.

————————————

Stephen E. Mindzak, for appellee.

Betty D. Montgomery, Attorney General; Schottenstein, Zox & Dunn, Kris M. Dawley and Robert M. Robenalt, Special Counsel, for appellants.

Bricker & Eckler, L.L.P., and Thomas R. Sant, for amicus curiae National Federation of Independent Business, in support of appellants.

Nan M. Still, for amicus curiae Ohio Farm Bureau Federation, Inc., in support of appellants.

Benesch, Friedlander, Coplan & Aronoff L.L.P., Joseph N. Gross and Irwin M. Feldman, for amicus curiae Council of Smaller Enterprises, a division of the Greater Cleveland Growth Association, in support of appellants.

John E. Gotherman, Barry M. Byron and Stephen L. Byron, for amicus curiae Ohio Municipal League, in support of appellants.

_____